James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

Ralph ADAMS, d/b/a Macon Shirt Company, Appellee.

No. 15659.

United States Court of Appeals Fifth Circuit.

March 7, 1956.

Bessie Margolin, Asst. Sol. U. S. Dept. of Labor, Washington, D. C., Stuart Rothman, Solicitor, Sylvia S. Ellison, Harry A. Tuell, James R. Billingsley, Attorneys, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., for appellant.

C. Baxter Jones, Macon, Ga., Charles M. Cork, Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

The District Court denied an injunction sought by the Secretary of Labor, 29 U.S.C.A. § 201 et seq., Section 217, against the use by the employer of a "Belo" contract[1] holding that it was valid under the Belo decision and the Amendment to the Fair Labor Standards Act.[2]

No question is raised that the affected employees qualified as workers whose duties necessitated irregular hours, or that the individual contracts, as such, were

---

1. Originally covering 12, at the time of the trial only 5, employees, the typical written contract was:

    "The Employer agrees to employ the Employee at a regular hourly rate of pay at $1.36 per hour for the first 40 hours in any workweek and at the rate of $2.04 per hour for all hours in excess of 40 in any workweek, with the guarantee that the employee will receive, in any week in which he performs any work for the Company, the sum of $95.20 as total compensation, for all work performed up to and including 60 hours in such workweek."

    "It is further agreed that this contract may be terminated by either party hereto upon notice to the other."

2. Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, affirming our decision Fleming v. A. H. Belo Corporation, 5 Cir., 121 F.2d 207.

    Amendment of 1949, Chapter 736, § 7, 63 Statutes 912, 29 U.S.C.A. § 207(e):

    "Sec. 7(e) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an

not actually executed in good faith. The sole attack made on the contracts, and the decision of the District Judge sustaining them, is that the proof did not show that each concerned employee worked a "sufficient", "significant", or "frequent" number of hours in excess of 60, the contract maximum.

Stated in various ways,[3] the Secretary insists that Belo and, what it in effect calls the "Belo Statute" requires that the actual hours of work, at least to *some* extent, equal and exceed the contract maximum period. We think this misreads both the Belo decisional law and the specific 1949 Amendment and is again the search for handy, arbitrary rule-of-thumb criteria, displacing inquiry and deliberative judgment, leaving it all to the wisdom of the Administrator.

The thrust of the trial court's findings, amply sustained, Fed.Rules Civ. Proc. rule 52(a), 28 U.S.C.A.; Galena Oaks Corp. v. Scofield, 5 Cir., 218 F.2d 217, is that while none[4] of the Belo employees, since the inauguration of the contract in 1950, had ever worked in excess of 60 hours, the contracts had been made in the good-faith business judgment of management that on the return of increased volume of sales (and hence production of shirts) confidently expected each season, the work of these individuals would frequently exceed 60 hours per week. In the meantime, of course, it was uncontradicted that they each frequently worked beyond a 40-hour week for substantial, but irregular, periods, and some, at least, had worked up to 60 hours.[5]

agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement

"(1) specifies a regular rate of pay of not less than the minimum hourly rate provided in section 6(a) and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek,

"and

"(2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

3. E. g., from Secretary's brief: " * * * the issue is whether the hourly rate specified in a guaranteed wage contract, based on a 60-hour week, is the true 'regular rate'. * * * where the actual workweek is not long enough to bring the contract rate into operation * * *." Again, "The 60-hour guaranteed wage agreements do not meet the standards of reality prescribed by Belo * * * since there is no relationship * * * between the stated hourly rate and the normal hourly payment * * *. Consequently, the contract hourly rate is never in fact used to determine their earnings." Again, Belo-type court decisions, " * * * require that the stipulated hourly rate and the maximum number of hours covered by the guarantee, be rationally related to the range of weekly hours customarily worked so that the stipulated hourly rate is actually operative to produce earnings in excess of the guarantee with sufficient frequency to

demonstrate that it is not wholly fictitious * * *."

4. One individual during one week did work in excess of 60 hours.

5. The suit was, of course, by the Secretary seeking affirmative relief, Mornford v. Andrews, 5 Cir., 151 F.2d 511; Super-Cold Southwest Co. v. McBride, 5 Cir., 124 F.2d 90; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172; Walling v. Northwestern-Hanna Fuel Co., D.C.Minn., 67 F.Supp. 833, by which it had brought into issue the question of actual operations under the Belo contracts. The record made by it in support of its claim was principally, (a) the testimony of a few of the Belo employees, several of whom gave no testimony on their hours of excess work, one who fixed her maximum in the neighborhood of 50 hours, or a little more, and at least one who said he worked as much as sixty hours, and (b) answers by the employer to Government interrogatories stating the average hours each of the twelve worked running from forty-two to fifty hours. Of the twelve, the average weekly hours for five were 50, for three, 48 hours, and the remaining four from 42 to 48 hours. The employer urged, and the trial court found, that these averages were in no way decisive, since excess hours were offset by frequent and lengthy periods in slack seasons in which there was little or no work with less than forty hours actually worked, so that, for example, a person with a fifty-hour average may have frequently worked, say, fifty-five or fifty-nine hours.

We think that this complies with the Belo doctrine and the 1949 Amendment. Every element in Belo is present here: (a) a job requiring irregular hours of work, (b) a guarantee of a minimum weekly wage, (c) a maximum contract workweek of 60 hours, and (d) a specified regular hourly rate and a specified overtime rate of one and one-half times the regular rate. There, with a weekly guarantee of $40.00 and a 67-cent hourly rate, the question was, 316 U.S. 624, 632, 62 S.Ct. 1223, 1227, 86 L. Ed. 1716, 1722: " * * * Whether the $40 contemplates compensation for overtime as well as basic pay * * * "; and, determining that it did, the court sustained it even though, on analysis, where work actually performed in any given week was less than the maximum (there 54½, here 60 hours), the rate of overtime was in excess of 150% and would itself fluctuate in amount and rate as excess hours varied, "But the Act does not prohibit paying more; it requires only that the overtime rate be 'not less than' 150% of the basic rate. It is also true that under this formula the overtime rate per hour may vary from week to week. But nothing in the Act forbids such fluctuation." And see, Walling v. Youngerman-Reynolds Hardwood Co., Inc., 325 U.S. 419, 426, 65 S.Ct. 1242, 1246, 89 L.Ed. 1705, 1711, "The particular wage agreements there [Belo] involved were upheld because it was felt that in fixing a rate of 67 cents an hour and contracts did in fact set the actual regular rate at which the workers were employed * * *."

It was implicit in Belo and spelled out in the 1949 Amendment that the contract be genuine and in good faith, not a sham or subterfuge. But what was mentioned by the Supreme Court as merely a specific *proof* of good faith—actual payment for a few instances of overtime in excess of the contract period calculated on the contract regular rate—the Secretary now turns into an indispensable ingredient of the contractual operations: e.g., " * * * the contract hourly rate is never in fact used to determine their [employees'] earnings." It is required, " * * * that the stipulated hourly rate is actually operative to produce earnings in excess of the guarantee with sufficient frequency to *demonstrate* that it is not wholly fictitious." (See note 3, supra.)

But what faces us here was the problem before the Court there for, "It appears from the record in that [Belo] case that the employees there involved also worked fluctuating workweeks, and that the average workweek was substantially less than 54½ [contract period] hours." Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 21, 67 S.Ct. 1056, 1058, 91 L.Ed. 1312, 1316. Legality of the Belo contract depended not upon how it affected the same or other employees for excess-contract overtime, but on its operations in the other and usual workweeks. Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 463, 470, 471, 475, 68 S.Ct. 1186, 92 L.Ed. 1502, 1516, 1520, 1523. The Court, Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 22, 67 S.Ct. 1056, 1058, 91 L.Ed. 1312, 1317, rejecting the Government's contention that "(b) * * * Belo has been implicitly overruled by later decisions * * * " of the court, plainly stated that, " * * * as to weeks in which they worked *less*, the Court *inferred* from the collateral specification of a basic rate and provision for a legal but variable rate of overtime pay that the guaranteed flat sum then due also contemplated both basic pay and overtime * * * "; and that, " * * * On the other hand, we find that in the three later cases relied on by petitioner [Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705; Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711], the agreed method by which wages were computed made a like *inference* impossible." (Emphasis supplied.)

Belo is still very much alive, Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, at page 462, 68 S.Ct. 1186, at page 1195, 92

L.Ed. 1502, at page 1516, and where efforts to meet the standard have failed, there has been striking evidence that the contractual arrangement did not reflect the true situation.[6]

Here the contracts have been adhered to with scrupulous exactness. The employment contract, as it may under the Act, Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518, calls for the payment of a specified hourly, straight-time and overtime rate but with a guarantee of a minimum weekly amount. The payment, week after week, of that minimum is not the substitution of some other standard or the use of a formula or method differing from the agreement. It is, on the contrary, performance in full of that undertaking.

Moreover, there can be no suggestion here that it has been done for, or has achieved, any ulterior purpose. Since the wage rates involved are so much in excess of the statutory minimum, the employer, without cutting wages, reducing its labor force, increasing the individual's hours of work or take-home pay, or appreciably increasing its labor cost, could literally comply [7] with the standard urged here.

■ These conclusions being supported, as we think they plainly are, by Belo decisional law (see also McComb v. Pacific & Atlantic Shippers Ass'n, Inc., 7 Cir., 175 F.2d 411; Tobin v. Little Rock Packing Co., 8 Cir., 202 F.2d 234), find further and completely sufficient foundation in the 1949 Amendment, an enactment sufficient within itself to reflect its own standards and bearing no inscription, "Belo" or otherwise, which would tie it to the case law out of which the colloquial term arose. We find it unnecessary to determine the full extent to which it added to the doctrine. We are clear though that it was meant by Congress to be an important part of the entire Act, removing the basic Belo philosophy from the peril of outright eradication or erosion under case-by-case attack. Congress, obviously, was not completely satisfied with things as they were.[8] Legis-

---

6. E. g., device based upon an articial split of a workday into straight time and overtime, Walling v. Helmerich & Payne, supra; so-called hourly rates were never used because piece-work rates were invariably higher, Walling v. Youngerman-Reynolds Hardwood Co., Inc., supra, Walling v. Harnischfeger Corp., supra; payments were made in disregard of the contract formula, 149 Madison Avenue Corp. v. Asselta, 331 U.S. 199, 67 S.Ct. 1178, 91 L.Ed. 1432; the so-called weekly wage was in fact nothing but a daily wage, Castle v. Walling, 5 Cir., 153 F.2d 923; the so-called guarantee was adroitly set, with no real basis for finding of irregularity of work and considerable doubt as to genuineness of the purported contracts, Beechwood Lumber Co. v. Tobin, 5 Cir., 199 F.2d 878. Cf. McComb v. Roig, 1 Cir., 181 F.2d 726, the hourly rate was constant for all but contract maximum and guarantee fluctuated.

7. Interpretive Bulletin, Part 778 (29 CFR, 1954 Supp., 778), Section 778.18(f), premised on the erroneous concept rejected by us that, "regular rate" is fixed at a rate which "will be operative in a significant number of workweeks" itself suggests re-examination, "periodically (at least every six months)" and, "If the

reasonable expectation of the parties has not been borne out, the contract should be amended accordingly." An employee whose excess contract time has not exceeded 50 hours would then have his contract reduced from 60 to 50 *plus*; if experience proved that he was frequently working, say, 55 hours, the contract would again be amended and without the need for change in total pay for a contract period of 55 *plus*. This reveals the basic error in the Administrator's proposed rule of thumb: how much in hours, or percentage, how frequently in time, for all or what percentage of affected employees, must the excess contract hours be? On what statutory basis does he make this claim?

8. Bay Ridge Operating Co. v. Aaron, supra [334 U.S. 446, 68 S.Ct. 1195], decided June 7, 1948, which precipitated almost instantaneous amendments to the Fair Labor Standards Act, Public Law No. 177, 81st Congress, 1st Session, July 20, 1949, C. 352, Sections 1, 2, 63 Stat. 446, 29 U.S.C.A. §§ 207, 216a; Public Law 393, 81st Congress, 1st Session, Oct. 26, 1949, C. 736, Sections 7, 16(e, f), 63 Stat. 912, 29 U.S.C.A. §§ 207, 216b, through its language on Belo, " * * * we have reaffirmed that decision as a

**532**

lation was a way to give effective, full voice to the underlying policy that contracts genuinely entered into in good faith are not to be subjected to interpretations which, themselves, are artificial and ignore the necessary adjustment, achieved thus by employer and employee, required in adapting the broad, imprecise standards of the Act to the endless variables of the business world.

■ The elements of the statute are plainly indicated, one of which is the 60-hour contract maximum. Its use where hours frequently worked substantially exceed the statutory 40-hour straight time is certainly a compliance. It would, we agree with the First Circuit, Mitchell v. Brandtjen & Kluge, Inc., 228 F.2d 291, 298, affirming D.C., 129 F.Supp. 675, " * * * be unwarranted judicial legislation * * * to read into § 7(e) * * that * * * the employees concerned must, in a certain percentage of work-

weeks, or in a 'substantial' or a 'significant' number of workweeks, actually have worked enough hours to exceed their respective guaranties * * *."

■ Little need be said of the appeal concerning the four non-Belo office employees whose "regular rate" the Government insists should have been determined by the hours actually and customarily worked, Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, and not on the 44-hour contract period. It arises primarily from one or more of these employees being off from time to time on Saturdays. The problem is entirely factual[9] and on ample evidence the Court found, and we approve, Fed.Rules Civ. Proc. rule 52(a), 28 U.S.C.A., Galena Oaks Corp. v. Scofield, supra, that the absences were "occasional" and within the exemption[10] of Section 7(d) (2).

Affirmed.

---

narrow precedent principally because of public reliance upon and congressional acceptance of the rule there announced * * *" may have been thought by Congress to reflect a begrudging tone foreshadowing for Belo contracts the fate of collective bargaining and similar labor contracts in the other decisions repudiated by Congressional action.

9. The Government, as with the Belo problem, think law can be reduced to mathematical averages: e. g., " * * * The effect of the rotation system here involved has been to reduce the workweeks of one or more—and, in some weeks, even all—of the office employees in almost 50% of the workweeks in over a three-year period." Since this was an injunction intended to prohibit contemporary violations, the trial court was justified in accepting uncontradicted testimony that for the preceding 46 weeks of the year 1953, out of a total of 184 employee-Saturdays, there were but nine employee absences on Saturday, or less than 5%. And the proof showed that when work was slack and there was nothing to do, some or all of the office help

were sometimes excused. Until there is charge, proof, and finding that it is a plan to thwart the law, these little acts of human kindness and consideration are for the judgment of the employer. The Government cannot police his conscience nor demand that he be a harsh, exacting taskmaster.

10. § 7(d) As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—

* * * * *

"(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment".