**FOREMOST DAIRIES, INC., and Home Town Foods, Inc., Appellants,**

v.

**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Appellee.**

No. 23530.

United States Court of Appeals
Fifth Circuit.

July 21, 1967.

Rehearing Denied Sept. 20, 1967.

John Bacheller, Jr., Fisher & Phillips, Atlanta, Ga., for appellants.

Bessie Margolin, Assoc. Sol., Dept. of Labor, Washington, D. C., Charles Donahue, Sol. of Labor, Robert E. Nagle, William Fauver, Caruthers G. Berger, Attys., Dept. of Labor, Beverley R. Worrell, Regional Atty., for appellee.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

AINSWORTH, Circuit Judge:

We are called upon here to interpret the meaning of the phrase "irregular hours of work" contained in Section 7(e) of the Fair Labor Standards Act of 1938.[1] Our interpretation will determine

---

1. 29 U.S.C. § 207(e), which provides: "No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) of this section if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such

the validity of a number of individual wage contracts between defendant and certain of its employees.

█ The Fair Labor Standards Act is a major enactment by Congress of social and economic policy, intended to protect certain groups of the population from substandard wages and excessive hours which endanger the national health and well-being and free flow of goods in interstate commerce. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). Section 7(a) of the Act[2] prescribes a maximum workweek of forty hours for an employee engaged in commerce unless the employee is paid at the rate of one and one-half times the regular rate for hours worked over forty. As the result of two decisions of the United States Supreme Court, Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942), and Walling v. Halliburton Oil Well Cementing Co., 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312 (1947), Congress in 1949 amended the Act by adding Section 7(e) to give statutory recognition to the principles in those decisions.[3]

Section 7(e), commonly known as the "Belo" provision, provides an exception to the regular forty-hour maximum workweek where the employee is engaged in "irregular hours of work." Under this subsection the employer is deemed not to have violated the provisions of Section 7(a) by employing any employee for a workweek in excess of forty hours, if the employee is hired pursuant to a bona fide individual contract and his duties necessitate "irregular hours of work," and the contract (1) specifies a regular rate of pay not less than the minimum hourly rate provided in the Act and compensation of not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guarantee of pay for not more than sixty hours based on the rates so specified.

On June 18, 1963, the district court enjoined Foremost Dairies, Inc., a large milk processor and ice-cream manufacturer, from violating the minimum wage, overtime and record-keeping provisions of the Act. Thereafter, on September 4, 1964, Home Town Foods, Inc. purchased

---

employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

2. 29 U.S.C. § 207(a), which provides in pertinent part:

"(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed;"

3. Representative Lucas, the chief sponsor of the provision of Section 7(e), issued a statement in connection with the legislation (see 95 Cong.Rec. A5475), the text of which, as to that section, reads as follows:

"(a) Belo plan: Gives specific legislative approval to Belo type contracts (upheld by the United States Supreme Court), under which an employer may pay his employees who work different hours each week a fixed guaranteed weekly salary, thus assuring employees stability of income and employment. The contracts may be used only if the duties of the employees necessitate irregular hours of work. The contracts may be made either individually with the employees or with unions, but must specify a regular rate of not less than 75 cents and compensation at not less than time and one-half such 75-cent rate for all hours worked over 50 in 1 week. The contracts must also provide a weekly guaranty of pay for not more than 60 hours based on the rates so specified (sec. 7(e))."

substantially all the assets and operations of Foremost and is, therefore, its successor. Inspections of Home Town plants by representatives of the Wage and Hour Division resulted in the charge that Home Town was not complying with Section 7(a) of the Act in connection with payment to certain employees of a guaranteed weekly wage. This meant, in effect, that the Secretary did not agree that Home Town's so-called Section 7(e) Belo contracts with these employees were valid because the employees' hours of work were not irregular within the contemplation of the subsection, since they fluctuated only in overtime (i. e., over forty hours per week) and did not fluctuate in straight time below forty hours per workweek. On July 17, 1965, Home Town petitioned the district court to reopen the injunction proceedings in order to amend the judgment so that the company would not be denied the right to pay its employees pursuant to guaranteed weekly wage plans as authorized by Section 7(e) of the Act. The Secretary responded and petitioned the court for an adjudication of civil contempt.

■ After a hearing the district court held Home Town in civil contempt of the injunction, ordered it to pay fines in the sum of $1,888.65 and back pay of $8,819.16 to the employees involved, all of whom were employed under so-called Section 7(e) Belo contracts. In well-considered, detailed reasons for judgment, the district judge found that all of the Section 7(e) employees worked a minimum of forty hours a week or more, and that Home Town had failed to satisfy its burden of proof [4] that the duties of these employees necessitated "irregular hours of work" within the meaning of Section 7(e) of the Act. The court held that the duties of none of these employees fluctuated within the range of hours in the *Belo* and *Halliburton* cases,[5] and that all of these employees have by reason of custom, practice or policy worked at least a regular minimum schedule of weekly hours except for absences due to vacations, holidays, illness or personal reasons. The court found that many of the instances of hours worked above the employees' regular minimum schedules were attributable to vacation and similar relief of other employees, predictable, seasonal and periodic work loads, and occasional short periods at the end of regular work days. We affirm.

There is no contest about the sufficiency in form of the separate Home Town employee (Belo) contracts providing a guaranteed weekly wage or that the rate of pay in the contracts provided

---

4. The district judge cited several cases in support of the principle that an employer who claims an exemption under the Act has the burden of showing that it applies, e. g., Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947), and Mitchell v. Kentucky Finance Company, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Appellant contends that these authorities are inapplicable, since they refer to Section 13 exemptions, and that Section 7(e) does not provide for an exemption but is an exception intended to be available to all employees who must work irregular hours and would benefit by it. It is correct that 7(e) provides an exception rather than an exemption but we see no essential difference between the two insofar as the law relating to burden of proof is concerned. The beginning phrase of Section

7(e) states "No employer shall be deemed to have violated subsection (a)" and shows unmistakably that Section 7(e) is an exception to the provisions of Section 7(a). See also Wirtz v. C & P Shoe Corporation, 5 Cir., 1964, 336 F.2d 21.

5. In both *Belo* and *Halliburton*, employees were required to work substantially fewer hours as well as substantially more than the statutory forty-hour standard because of the unpredictable irregularity inherent in the nature of their duties. *Belo* involved newspaper employees whose work schedules varied from a few hours a day to twelve hours per day. In *Halliburton*, oil well servicing employees worked many weeks for more than one hundred hours, others less than thirty, and 13 per cent of their work weeks amounted to less than forty hours.

overtime pay of one and one-half times the agreed hourly rate for a specified number of hours in excess of forty but less than sixty per week. In this case the specified hours for different employees varied, being forty-eight, fifty, fifty-two or fifty-four hours per week. It is not disputed that each of the employees involved worked mimimum regular weekly schedules of forty hours or more each week. The fluctuations, therefore, were all in overtime hours in the range above forty hours per week. The serious issue presented for decision concerns the validity of the Belo contracts. If the contracts are void, the employees were not paid proper overtime compensation as required by the basic overtime standards of Section 7(a).

Home Town contends that the fluctuation in employees' working hours was necessitated by their duties involving unpredictable exigencies and unpredictable hours and that these fluctuations, though they occurred only in overtime hours, constituted "irregular hours of work" within the meaning of Section 7(e) of the Act. The company states that guaranteed wage contracts were used by it to minimize the variations in weekly pay to which these employees would be subject if paid on a regular hourly basis without any guarantee. It argues that Section 7(e) is concerned solely with eliminating or minimizing variations in overtime pay caused by irregular overtime hours and that the purpose of Section 7(e) is to afford stability of income which would not be possible under a regular hourly rate of pay; that the Secretary is attempting administratively to prevent effective use of Belo contracts and thus abrogate Section 7(e).

The Secretary contends that Section 7(e) was not intended to apply to employees who regularly work a minimum schedule of hours equal to or exceeding the statutory workweek standard of forty hours where the only irregularity is in the overtime hours worked. He states that since each employee works a minimum of forty hours or more each week, he thus has the necessary workweek security referred to in the *Belo* case and the guaranteed weekly salary does no more.[6]

The Secretary's Interpretative Bulletin, 29 C.F.R. § 778.406, provides that Belo contracts lack the irregularity of hours required by Section 7(e) where the employment hours fluctuate only in the overtime range above the maximum forty-hour workweek prescribed by the statute.[7]

6. The Supreme Court in Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942) commented on the guarantee arrangements of the contracts as follows:
   "This policy is based upon a common sense recognition of the special problems confronting employer and employee in businesses where the work hours fluctuate from week to week and from day to day. Many such employees value the security of a regular weekly income. They want to operate on a family budget, to make commitments for payments on homes and automobiles and insurance."

7. Section 778.406 provides as follows:
   "Nonovertime hours as well as overtime hours must be irregular if section 7(e) is to apply.
   "Any employment in which the employee's hours fluctuate only in the overtime range above the maximum workweek prescribed by the statute lacks the irregularity of hours for which the Supreme Court found the so-called 'Belo' contracts appropriate and so fails to meet the requirements of section 7(e) which were designed to validate, subject to express statutory limitations, contracts of a like kind in situations of the type considered by the Court (see § 778.404). Nothing in the legislative history of section 7(e) suggests any intent to suspend the normal application of the general overtime provisions of section 7(a) in situations where the weekly hours of an employee fluctuate only when overtime work in excess of the prescribed maximum weekly hours is performed. Section 7(a) was specifically designed to deal with such a situation by making such regular resort to overtime more costly to the employer and thus providing an

The Secretary states that historically his interpretation dates back to 1950 and his first bulletin interpreting the 1949 amendments, which contained the following provision:

"The type of employment agreement permitted under section 7(e) can be made only with (or by his representatives on behalf of) an employee whose 'duties * * * necessitate irregular hours of work.' It is clear that no contract made with an employee who works a regularly scheduled workweek or whose schedule involves alternating fixed workweeks will qualify under this subsection. * * *" [Feb. 4, 1950, Fed. Register p. 637, § 778.18(b)]

The Secretary further states:

"This provision has been consistently continued in the successive reprints and amended Interpretative Bulletins through the most recent one issued February 2, 1965 (Fed. Reg. § 778.-405). Since, as found by the trial court, all of the employees here involv-

ed 'have regularly worked minimum daily and weekly schedules * * *' * * *, the above-quoted interpretation—which dates back to the first year after enactment of Section 7(e), and has been consistently maintained since—would, without more, operate to exclude the application of Section 7(e).

"The more specific position that the irregularity of hours requirement is not met in cases where the employee's hours fluctuate only in the overtime range—which, in effect, is no more than an elaboration of the earlier more general interpretation—was expressly enunciated by the Secretary in 1958 shortly after the decision in Trager v. J. E. Plastics Mfg. Co., decided February 27, 1958 * * *. As appears in the opinion in Mitchell (Secretary of Labor) v. Independent Stave Co., 168 F.Supp. 830, at 832 (W.D.Mo., September 22, 1958), the Secretary at that trial advanced this position in reliance

inducement to spread the work rather than to impose additional overtime work on employees regularly employed for a workweek of the maximum statutory length. The 'security of a regular weekly income' which the Supreme Court viewed as an important feature of the 'Belo' wage plan militating against a holding that the contracts were invalid under the Act is, of course, already provided to employees who regularly work at least the maximum number of hours permitted without overtime pay under section 7(a). Their situation is not comparable in this respect to employees whose duties cause their weekly hours to fluctuate in such a way that some workweeks are short and others long and they cannot, without some guarantee, know in advance whether in a particular workweek they will be entitled to pay for the regular number of hours of nonovertime work contemplated by section 7(a). It is such employees whose duties necessitate 'irregular hours' within the meaning of section 7(e) and whose 'security of a regular weekly income' can be assured by a guarantee under that section which will serve to increase their hourly earnings in short workweeks under the statutory maximum hours. It

is this benefit to the employee that the Supreme Court viewed, in effect, as a quid pro quo which could serve to balance a relaxation of the statutory requirement, applicable in other cases, that any overtime work should cost the employer 50 percent more per hour. In the enactment of section 7(e), as in the enactment of section 7(b) (1) and (2), the benefits that might inure to employees from a balancing of long workweeks against short workweeks under prescribed safeguards would seem to be the reason most likely to have influenced the legislators to provide express exemptions from the strict application of section 7(a). Consequently, where the fluctuations in an employee's hours of work resulting from his duties involve only overtime hours worked in excess of the statutory maximum hours, the hours are not 'irregular' within the purport of section 7(e) and a payment plan lacking this factor does not qualify for the exemption. (See Goldberg v. Winn-Dixie Stores (S.D.Fla.), 15 WH Cases 641; Wirtz v. Midland Finance Co. (N.D.Ga.), 16 WH Cases 141; Trager v. J. E. Plastics Mfg. Co. (S.D.N.Y.), 13 WH Cases 621; McComb v. Utica Knitting Co., 164 F.2d 670.)"

on the *Trager* decision. The Secretary also took this specific position in the *Winn-Dixie* and *Midland Finance* cases (decided in September 1962 and June 1963, respectively). The courts in the latter two cases approved and adopted this specific interpretation * * *." [8]

The Opinion Letter of the Wage-Hour Administrator dated March 7, 1962, CCH Labor Law Reporter § 30,617, holds that a Belo contract guaranteeing weekly pay is invalid if the fluctuations in weekly hours occurred only occasionally, if the fluctuations are only in the number of overtime hours worked, or if fluctuations below forty hours a week are not substantial.[9]

■ We are, of course, not bound by interpretative bulletins or administrative opinions. However, the Supreme Court said in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942): "While the in-

terpretative bulletins are not issued as regulations under statutory authority, they do carry persuasiveness as an expression of the view of those experienced in the administration of the Act and acting with the advice of a staff specializing in its interpretation and application." In Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), the Supreme Court further held: "We consider that the rulings, interpretations and opinions of the Administrator under this Act [Fair Labor Standards Act], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it

---

8. The Secretary's position which we have quoted is contained in a letter to the Court dated May 19, 1967, in response to our question at oral argument as to when the Secretary first adopted his interpretation relative to Section 7(e). Appellant contends, however, in its letter response to the Court's question, that "This section first appeared in the Interpretative Bulletins on February 2, 1965; there is no reference to any 'below 40 rule' in former Interpretative Bulletins, Section 778.18, which construed Section 7(e) during the period 1950–1965. Prior to the *Trager* and *Independent Stave Co.* decisions in 1958, we are not aware of any official position that fluctuations below 40 are required by Section 7(e)."

9. The Opinion Letter reads in full as follows:
    "This is in reply to your letter enclosing a proposed agreement governing the compensation of the X firm, of which you are a partner. You wish to know whether payment of this employee in accordance with the agreement will meet the requirements of the Fair Labor Standards Act.
    "The agreement, of the type sometimes referred to as a Belo contract, is designed to qualify under Section 7(e) of the Act, a copy of which is enclosed. Also enclosed is an Interpretative Bul-

letin Part 778 on Overtime Compensation. Section 778.18 of the bulletin explains the general conditions under which payment of an employee in accordance with a guaranteed weekly pay contract will comply with the minimum wage and overtime provisions of the Act. You will note from the statement stamped on the cover that this bulletin has not been revised to conform with the minimum wage increase provided by the 1961 amendments to the Act.

"It is the Divisions' position that a guaranteed pay agreement will not meet the requirement that the employees duties 'necessitate irregular hours of work' where the fluctuations in his weekly hours occur only occasionally, or only in the number of overtime hours he may work, or if fluctuations below 40 hours a week are not substantial.

"The agreement you submitted appears to meet all requirements of Section 7 (e); however, the validity of such a contract depends upon whether the terms of the agreement actually are followed and whether, in fact, the duties of the employee necessitate irregular hours of work as required by this Section of the Act. For this reason it is not possible to give you a definite ruling solely on the basis of the proposed agreement."

power to persuade, if lacking power to control."

Several district court decisions have passed on the below forty-hour fluctuation requirement as interpreted by the Secretary. In Goldberg v. Winn-Dixie Stores, Inc., 1962, S.D.Fla., 46 L.C. ¶ 31,-334 (15 W.H.Cases 641), in a case where all of defendant's employees under Belo contracts worked regularly at least forty hours per week, the court (Simpson, J.) held that these employees had the necessary workweek security without a guaranteed weekly salary, and that the phrase "irregular hours of work" would not include a situation where the irregular hours involved only overtime work, in excess of forty hours a week. The court cited Trager v. J. E. Plastics Mfg. Corp., 1958, S.D.N.Y., 34 L.C. ¶ 71,320 (13 W.H. Cases 621), in support of its holding. In Trager, the employee involved worked regularly at least forty hours a week and only the amount of his overtime hours varied. The court held:

"In the absence of satisfactory proof indicating that in some workweeks plaintiff worked less than the statutory minimum of 40 hours, the provision of Section 7(e) providing that 'the duties of such employee necessitate irregular hours of work', is not met by proof indicating 'irregularity' in his overtime hours for a portion of the year." [10]

In Wirtz v. Midland Finance Co., 1963, M.D.Ga., 48 L.C. ¶ 31,473 (16 W.H.Cases 141), the court found that all of the Belo employees involved worked considerably more hours than forty in the usual work-

week and, therefore, that the Section 7 (e) contracts were invalid. It held:

"The requirement contained in § 7(e) of the Act that the 'duties of such employee necessitate irregular hours of work * * *' is not satisfied in a situation where the irregular hours involve only overtime work in excess of 40 hours per week and do not involve straight time hours. Since there is no evidence of any irregularity or fluctuation of straight time hours worked we find that the employees claimed to have been employed by the Defendants pursuant to the provisions of § 7(e) of the Act do not validly come within the exemption provided by that Section." [11]

◼ We hold that the Secretary's interpretation of Section 7(e), 29 C.F.R. § 778.406, is a valid and reasonable interpretation of the meaning of Section 7(e) of the Act. It is a restatement of the *Belo* principles and is well supported by the antecedent judicial and legislative history. It is based on sound, realistic principles for any other construction of the subsection would seriously challenge the effectiveness of Section 7(a) of the Act which prescribes a statutory maximum workweek with overtime compensation for hours in excess thereof. We do not, by this holding, minimize the propriety of valid Section 7(e) contracts. However, when logically applied, appellant's contention that the fluctuation in the workweek hours need occur only in overtime hours would make it rather easy to substitute Section 7(e) contracts for virtually all employees and thereby strike

10. In *Trager*, the court pointed out that the statute is silent as to the meaning of the clause that "the duties [must] necessitate irregular hours of work" but said that the judicial decisions prior to 1949 are helpful. McComb v. Utica Knitting Co., 2 Cir., 1947, 164 F.2d 670, was cited to the effect that there must be, as there was in *Belo* and *Halliburton*, "a condition of irregularity or instability of work, so that the guaranty yields the employees a stability of employment and income otherwise absent." In *Trager*, the court said that there must be irregularity in the number of hours worked per week less than forty and that irregularity in

the overtime hours alone is not of itself sufficient, and cited in support of its holding, Mitchell v. Feinberg, 2 Cir., 1956, 236 F.2d 9, cert. den. 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956), and Mitchell v. Brandtjen & Kluge, Incorporated, 1 Cir., 1955, 228 F.2d 291.

11. Mitchell v. Independent Stave Company, 1958, W.D.Mo., 168 F.Supp. 830, expresses a contrary view to that of *Winn-Dixie Stores*, *Trager* and *Midland Finance*, though the court held the employment contracts invalid on other grounds.

at a vital provision of the Act, Section 7(a).[12]

■ If the fluctuation of hours in average workweeks varies only in overtime hours, there is not such irregularity of hours, in our view, as would justify our holding that individual employment contracts under Section 7(e) are valid. Where employees regularly work at least the maximum number of hours per workweek permitted without overtime pay being due under Section 7(a), and any irregularity of fluctuation in workweek hours occurs only in hours over the maximum, in overtime hours, such fluctuation does not constitute "irregular hours of work" and Belo contracts with such employees are invalid under Section 7(e).

■ Section 7(e) is silent on the degree of fluctuation required, and the phrase "irregular hours of work" is undefined. However, we must give an interpretation to the section which would give effect to the central purpose of the statute itself. See Florida Citrus Exchange v. Folsom, 5 Cir., 1957, 246 F.2d 850, reversed, Fleming v. Florida Citrus Exch., 358 U.S. 153, 79 S.Ct. 160, 3 L.Ed. 2d 188 (1958). This is eloquently expressed in the Act itself, Section 2 (29 U.S.C. § 202), in which Congress declared "that the existence, in industries engaged in commerce * * * of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channel and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; * * *."

Affirmed.

12. We do not read our decision in Mitchell v. Adams, 5 Cir., 1956, 230 F.2d 527, cited by appellant, in any way to the contrary. An entirely different question relative to the validity of an interpretation by the Secretary concerning Belo Section 7(e) contracts was involved, i. e., whether the actual hours of work should at least, to some extent, equal and exceed the contract maximum period. We held the interpretation invalid. It should be noted that the evidence in *Adams*, according to the trial court's finding, was that "excess hours were offset by frequent and lengthy periods in slack seasons in which there was little or no work with less than forty hours actually worked" (230 F.2d at 529, n. 5). Thus, these contracts were of the true "Belo" variety.