**Stanley E. MASTERS, et al., Plaintiffs,**

**v.**

**CITY OF HUNTINGTON, a municipal corporation, Defendant.**

Civ. A. No. 3:88–0805.

United States District Court,
S.D. West Virginia,
at Huntington.

Jan. 8, 1992.

---

Charles W. Peoples, Jr., Huntington, W.Va., for plaintiffs.

Scott A. Damron, Vinson, Meek & Pettit, Huntington, W.Va., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

TAYLOR, United States Magistrate Judge.

Firefighters employed by the City of Huntington instituted the present action

alleging violations by the City of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (hereinafter "the Act" and "FLSA"). Seeking injunctive and monetary relief, plaintiffs contend that the City's method of paying them over the years, and in particular since the FLSA became applicable to municipal firefighters on April 15, 1986,[1] has had the effect of depriving them of overtime compensation for hours worked in excess of forty a week at one and one-half times their regular rate of pay, in violation of 29 U.S.C. § 207(a).[2] In a separate count of the complaint, plaintiffs assert, under the Court's pendent jurisdiction,[3] violations by defendant of similar provisions of the law of the State of West Virginia governing maximum hours and overtime compensation. *W.Va.Code 21–5C–1, et seq.*

Concluding that bifurcation presented the most expeditious manner of proceeding, a trial to the Court was conducted on the issue of liability, and it is to this issue that the Findings of Fact and Conclusions of Law are addressed.

▆▆▆▆ Firefighters employed by the City have, at least since 1973, been represented by the International Association of Firefighters, Local Union 289, and the City and Local 289 have negotiated Wage and Benefit Agreements covering, *inter alia,* compensation of firefighters in 1973, 1975, 1977, 1979 and 1982. While the 1982 agreement was to have expired on September 30, 1984, the parties agreed to its extension, and its term remained in effect at the time the complaint was filed and at the

time of trial. Compensation of firefighters in each of the five collective bargaining agreements, uniformly referred to as "salaries", was stated on an annual basis for each rank of fireman, the ranks being probationary, third class, second class, first class, lieutenant, captain and deputy chief. Nothing set forth in the agreements indicated a breakdown of the annual compensation into monthly, biweekly or hourly rates.

The City utilizes a three platoon system in the employment of its firefighters. This system, together with an election by the firefighters to work a twenty-four hour shift,[4] has resulted in a work schedule for firefighters which involves a twenty-four hour shift, twenty-four hours off, a twenty-four hour shift, twenty-four hours off, a twenty-four hour shift, followed by ninety-six hours (four days) off, with this cycle being repeated continuously throughout the year. Prior to the beginning of the year, a calendar card is given each fire fighter, and from that card he is able to determine the days during the coming year he is scheduled to work. The three platoon system and this cycle of work has been followed at least since the early 1970's.

Biweekly pay periods have also been in effect during this time and, as would be expected, paychecks for actual hours worked ranged from those reflecting a minimum of ninety-six hours worked during some pay periods to a maximum of one hundred forty-four hours in others.[5] To ameliorate the financial hardship resulting from receipt of paychecks of disparate

---

**1.** In February of 1985, the Supreme Court, reversing its decision in *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), reinstated application of the FLSA to state and local government employees engaged in "traditional governmental functions." *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). In the same year, Congress, by amendments to the Act, delayed application of the FLSA to the states until April 15, 1986. *Federal Labor Standards Amendments of 1985,* Pub.L. 99–150, 99 Stat. 787 (1985).

**2.** Section 207(a) of the Act provides in pertinent part: "... no employer shall employ any of his employees ... for a work-week longer than forty hours unless such employee receives compen-

sation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

**3.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**4.** State law, *W.Va.Code 8–15–10,* provides that, by a majority vote, firemen can "determine the schedule of hours to be worked in any twenty-four-hour period; Provided, That the members ... shall not remain on duty for more than twenty-four consecutive hours except in case of an emergency...."

**5.** On a weekly basis, a fireman regularly works either forty-eight or seventy-two hours.

amounts, and at the request of the firemen, the City implemented a system in 1972 whereby it paid firemen in twenty-six equal biweekly payments.

To arrive at the amount owed on a biweekly paycheck, the City simply divided a fireman's annual salary by twenty-six, the number of pay periods in a year. Insofar as the number of hours worked in a pay period is concerned, payroll records reflected one hundred twelve hours of work each two-week period or fifty-six hours a week, when a fireman worked only his regularly scheduled shifts. These hours, which are clearly averaged hours, were apparently arrived at on the basis of a computation which took account of the fact that, after completing nine weeks of his regularly scheduled shifts, a fireman worked an average of fifty-six hours a week.[6]

Pay schedules, maintained by the City and utilized by it in its payroll records and in computing paychecks, set forth for each rank of fireman his annual salary, monthly salary, biweekly salary, and his hourly rate of pay. The hourly rates were further broken down into regular rates and overtime rates, with the overtime rates being one and one-half times the regular hourly rate. The pay schedule also reflected that, when working regularly scheduled shifts, the firemen would be paid biweekly for eighty hours at the regular hourly rate and thirty-two hours at the overtime rate, these hours, one hundred twelve, being the averaged hours worked weekly as previously noted. If, during a pay period, a fireman worked only his regularly scheduled shifts, his paycheck reflected one hundred twelve hours of work and on its payroll records the City calculated eighty hours at his designated regular hourly rate and thirty-two hours at his designated overtime hourly rate. The total of the two calculations equalled his biweekly salary as set forth in the pay schedule, the biweekly salary being one-twenty-sixth of his annual salary as set forth in the pay schedule and in the collective bargaining agreement negotiated between the union and the City.

The dispute between the firefighters and the City in this case has been directed principally towards the question of whether the regular and overtime hourly rates set forth in the City's pay schedule were the rates negotiated and agreed upon as a part of the collective bargaining process and understood by the parties as being the hourly rates upon which plaintiffs were compensated. According to their testimony, the firefighters essentially understood that they were being paid a salary, that the salary was divided into twenty-six equal payments which compensated them for the time they worked, shown on their pay stubs as one hundred twelve hours and designated on the stub as "REG. HRS. 112". Firemen received additional compensation when they worked beyond their regularly scheduled shifts, payment for these hours being designated on their check stubs as "OT HRS."[7] The City, on the other hand, contends that its pay schedules, showing a regular hourly rate and an overtime hourly rate, were available to firemen, that the firemen were aware of these rates during the collective bargaining process and prior to consummation of the Wage and Benefit Agreements and that, in any event, the firemen could have determined their hourly rate based upon information they had and their pay for regularly scheduled shifts and payments received for work beyond regularly scheduled shifts. The City also points out that the firemen have accepted their paychecks based upon rates utilized by the City over the years, evidencing agreement with the manner of calculating wages, including the regular and overtime hourly rates.

The difficulty with the City's position, however, is that the regular and overtime

---

**6.** After working eighteen weeks, he averaged one hundred twelve hours of work every two weeks.

**7.** Firemen uniformly testified that, according to their understanding, overtime involved work beyond their regularly scheduled shifts. This understanding may have resulted from the fact that compensation was based on an annual salary, since it is undisputed that working regularly scheduled shifts inevitably involved work in excess of forty hours a week. Designation of the one hundred twelve hours on the pay stub as regular hours could also lead to confusion.

hourly rates shown in the pay schedules fail to accurately reflect hourly rates paid firemen for hours of work actually performed by them. This is obviously so inasmuch as the hourly rates set forth in the pay schedules are mathematically calculated to compensate firemen for average hours worked, such average, as noted, being based on work performed during a nine week cycle rather than on hours of work actually performed by firemen during the weeks for which they are compensated.[8] An employee's "regular rate" under the Act, however, "is not a hypothetical construction," *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 105 (9th Cir.1975), but "an 'actual fact'...." *149 Madison Avenue Corp. v. Asselta*, 331 U.S. 199, 204, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947). The hourly rates set forth in the pay schedules, being based on averaged hours, can only be derived by means of a "hypothetical retrospective construction of ... a rate structure,"[9] inasmuch as rates based on eighty hours regular time and thirty-two hours overtime (forty hours regular time and sixteen hours overtime per week) simply fail to reflect the actual hourly rate paid firemen who regularly work weeks alternating between forty-eight hours and seventy-two hours. As the Court pointed out in *Bay Ridge Operating Co., Inc. v. Aaron*, 334 U.S. 446, 463–64, 68 S.Ct. 1186, 1195–96, 92 L.Ed. 1502 (1948), parties to a collective bargaining agreement cannot "fix a regular rate without regard to hours worked," nor can "the regular rate of pay ... be left to a declaration by the parties as to what is to be treated as the regular rate for an employee, it must be drawn from what happens under the employment contract." Thus, even if it were established that the rates set forth in the pay schedules were agreed to by the firefighters,[10] those rates could not be relied upon since they clearly were established "without regard to hours worked."

Under the Act, forty hours is the maximum number of hours an employee may work in a workweek without receiving overtime compensation. The workweek is the "standard"[11] and "averaging of hours over 2 or more weeks" is not permitted. 29 C.F.R. § 778.104. The "only provision of the Act which allows an employer to pay the same total compensation each week to an employee who works overtime and whose hours of work vary from week to week" is found in section 7(f), 29 U.S.C. § 207(f), the provision sanctioning so-called "Belo"[12] contracts. 29 C.F.R. § 778.403.[13]

**8.** According to the City's payroll records and pay schedules, firemen were paid for one hundred twelve hours in a biweekly period (fifty-six hours per week), when, in fact, they worked either one hundred forty-four hours, one hundred twenty hours or ninety-six hours biweekly (seventy-two hours or forty-eight hours weekly).

**9.** *Brennan v. Valley Towing Co., Inc., supra* at 106.

**10.** An agreement by the firefighters to an hourly rate which failed to reflect what was, in fact, transpiring under the contract would provide no basis for relief to defendant. Plaintiffs' right to overtime compensation at one and one-half times the actual hourly rate is not waivable. As the Court held in *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981), "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."

**11.** At the time suit was filed, firemen were not employed on a "work period basis" as authorized by the provisions of 29 U.S.C. § 207(k).

They were, the City insists, being paid a regular hourly rate for the first forty hours worked in a work week and one and one-half times the regular rate for all hours in excess of forty hours.

**12.** *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). A *Belo* exception was sanctioned by the Court and, with modifications, by statute to afford the employee whose work week fluctuates "the security of a regular weekly income" and allow his employer "to anticipate and control in advance at least some part of his labor costs." 29 C.F.R. § 778.-404.

**13.** Section 7(f) provides the following exception from the provisions of section 7(a):

No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a work week in excess of the maximum workweek applicable to such employee under subsection (a) of this section if such employee is employed pursuant to a *bona fide* individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irreg-

Defendant has argued that its method of payment, involving equal biweekly paychecks for weeks of work alternating between forty-eight and seventy-two hours, conforms to the requirements of this section. Apart from the question of whether the agreement between the City and the firefighters "specifies a regular rate of pay," however, it is apparent that the method of payment utilized here fails to qualify for this exemption from the requirements of section 7(a).

*Belo* contracts may only be utilized when the duties of the employee "necessitate irregular hours of work," and the Secretary has interpreted this requirement as excluding situations where "the employee works an irregular number of hours according to a predetermined schedule." Moreover, irregular hours contemplate "significant variations in weekly hours of work both below and above the statutory weekly limit on nonovertime hours," not, as in the case of the City's firefighters, variable hours which in every instance exceed the weekly limit on nonovertime hours. 29 C.F.R. § 778.405. The Secretary's interpretation of the phrase "irregular hours" has, it is noted, been sanctioned by the courts when called upon construe section 7(f).[14]

To the extent that questions remain with regard to the issue of whether the City and its firefighters agreed upon regular hourly rates of pay, *i.e.*, the hourly rates set forth in the City's pay schedules, the Court can only conclude from the evidence presented that they have not. As has been seen, the hourly rates utilized by the City were artificial rates based upon averaged hours, not actual hours, worked. As such, they necessarily fall within the category of hourly rates characterized in the decisions as being derived by "hypothetical retrospective construction." *Brennan v. Valley Towing Company, Inc., supra* at 106.[15] The parties clearly bargained on the basis of annual salaries, not hourly rates, and increases in pay over the years were implemented as a percentage of annual salary or an across-the-board increase in salaries. While defendant contends that plaintiffs could have calculated their hourly rates given knowledge of their salaries and the fact that they were paid for forty hours a week at the regular rate and sixteen overtime hours a week at one and one-half times the regular rate, the Court would note that in the most recent Wage and Benefit Agreement, the 1982 agreement, the section governing overtime pay provides that, "[s]hould a 3 platoon employee be required to work more than one hour beyond his scheduled work day, he shall be compensated for each hour worked at one-and-one-half times his regular rate of pay." Language contained in the prior agreement, the 1979 agreement, provided that "[t]ime and a half the Firefighter's hourly rate of pay shall be paid for all hours worked after having worked a regularly assigned work shift or above the regularly assigned workweek in excess of forty-two (42) hours...."[16] No explanation was given for the deletion of the provision relating to maximum hours before payment of overtime, and, as worded, the 1982 agreement appears to contemplate payment of the overtime rate only after a fireman has worked his regularly scheduled shift, that is, forty-eight hours in some weeks and seventy-two hours in others.[17]

---

ular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified.

**14.** *See, Donovan v. Tierra Vista, Inc.,* 796 F.2d 1259, 1260 (10th Cir.1986); *Foremost Dairies, Inc. v. Wirtz,* 381 F.2d 653 (5th Cir.1967), *cert.*

*denied* 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968).

**15.** In answers to interrogatories, the City provided the formula utilized in calculating hourly rates, a formula based upon an average work week of fifty-six hours.

**16.** In 1979, West Virginia's minimum wage and overtime compensation statutes, applicable to municipal firemen, required overtime to be paid after working forty-two hours.

**17.** Note is taken of the fact that this interpretation would comport with the understanding that

In light of the language contained in the 1982 contract it can hardly be argued that plaintiffs could derive their hourly rate based on a formula contained in the Wage and Benefit Agreement.[18]

Finally, note is taken of the fact that in December of 1988, the City, implementing a "Schedule K Pay Schedule," notified firefighters that effective "December 31, 1988 all 24-hour personnel will be paid 212 regular hours plus 12 overtime hours in each 28 day work period." At the same time, the City revised its pay schedule; however, the pay received by firemen remained the same, only the hourly rates shown on the pay schedule and the hours considered regular hours and overtime hours changed. Taking account of this unilateral change in the hourly rates of pay, it can hardly be argued that such rates were arrived at as a result of express, or even implied, agreements between the City and its employees. This change in hourly rates, effective December 31, 1988, was simply another demonstration of the fact that the hourly rates shown on defendants' pay schedule and in its payroll records were a function of the annual salary, *i.e.*, they were calculated by means of a hypothetical retrospective construction.

In the absence of a mutually agreed upon rate of pay, and taking account of the fact that the City's hourly and overtime rates were calculated on the basis of averaged hours of work rather than actual hours worked in a pay period, the Court finds that the City has violated the provisions of 29 U.S.C. § 207(a) by failing to pay firefighters overtime compensation at time and one-half their actual hourly rate of pay, *i.e.*, the hourly rate "determined by dividing" the firefighter's "total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109.[19]

With regard to the applicable limitations period, 29 U.S.C. § 255(a) provides a two year period of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." By its decision in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Court made clear that a "willful violation" contemplates more than negligence or even conduct which could be characterized as unreasonable. *Id.* at 135 n. 13, 108 S.Ct. at 1682 n. 13. To constitute willfulness, it must be established that "the employer either knew" his conduct violated the Act or "showed reckless disregard for the matter of whether its conduct was prohibited...." *Id.* at 133, 108 S.Ct. at 1681. Nothing in the evidence presented in this case would support a finding that the City knew its method of payment was prohibited by the Act or that it acted in reckless disregard of the requirements of the FLSA. Under such circumstances, the two-year statute of limitation applies.

Plaintiffs have asserted entitlement to liquidated damages based on defendant's violation of section 207(a). The FLSA provides that employers who violate the provisions of section 206 or 207 "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). While the language of the statute is mandatory, the Court, in the exercise of its discretion, may decline to award liquidated damages when the employer establishes "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the

---

the firemen had as to when they were paid for overtime work.

**18.** Clearly, they could not derive an actual hourly rate in light of the fact that they were being

paid on the basis of averaged hours, not actual hours worked.

**19.** *See also, Kohlheim v. Glynn County, Georgia,* 915 F.2d 1473, 1480 (11th Cir.1990).

FLSA. 29 U.S.C. § 260.[20] In the Court's view, such a showing has been made here.

Undisputed testimony establishes that, prior to the effective date of the Act, officials involved in personnel management for the City met with the City's attorney and the fire chief to review the pay structure and determine whether the City was in compliance with the requirements of the FLSA. In the period before the FLSA became applicable, the City's payment structure for firefighters had been governed by the wage and hour laws of the State of West Virginia under statutory provisions which, in similar fashion to the FLSA, provided that "no employer shall employ any of his employees for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed." *W. Va. Code 21–5C–3.* Based on the pay structure in place, City officials believed that firemen were being paid forty hours a week at an established hourly rate and hours in excess of forty at a rate of one and one-half times the regular hourly rate.[21] City officials further believed, and the Court accepts their testimony, that the firefighters were aware of their hourly rates of pay as set forth in the City's pay schedule. Equal biweekly paychecks were apparently considered a problem, however, concern over this matter was resolved by a request from the president of the fire fighter's union that the practice of equal pays be continued. In evaluating the pay structure, assistance and advice was sought not only from the City attorney, but also from Department of Labor officials, Department of Labor regulations, and municipal organizations to which the City, or its officials, belonged.

When it is realized that it was not simply the unilateral imposition of hourly rates, at a time long before the FLSA became applicable to municipal firefighters,[22] that resulted in violation of the Act's overtime compensation requirements, but payment of such hourly rates based on averaged hours, it seems apparent that city officials, viewing a pay structure which apparently paid a regular rate for forty hours work and a rate one and one-half times the regular rate for hours in excess of forty, had a reasonable basis for believing that the City was not in violation of the FLSA. Concluding that the City has established good faith and reasonable grounds for believing that the pay structure was not in violation of the FLSA, the Court finds that liquidated damages are not warranted in this case.

Finding a violation of the FLSA by the City obviates the need, as counsel conceded at trial, for evaluating the City's pay structure under state statutes governing minimum wage and maximum hours. *W. Va. Code 21–5C–1, et seq.* The Court does not, therefore, resolve the question of whether coverage of eighty percent of the City's employees by the FLSA excludes coverage under state law. *See, W. Va. Code 21–5C–1(e).*

Attorney fees and costs of action as provided for in 29 U.S.C. § 216(b) will await completion of these bifurcated proceedings.

---

**20.** *See, Burnley v. Short,* 730 F.2d 136, 140 (4th Cir.1984).

**21.** While, as noted, firemen were being paid on the basis of averaged hours, this fact was not the basis upon which suit was brought, nor was it relied upon by plaintiffs at trial. Indeed, in asserting failure to compensate for overtime in accordance with the Act, the firemen relied upon average hours worked, rather than actual hours. Under such circumstances, it is not surprising that the consequences of this defect in the pay structure was not appreciated by city officials.

**22.** *See, Wethington v. City of Montgomery,* 935 F.2d 222, 226–30 (11th Cir.1991).