Ronald W. HARP and Joe I. Tarica,
Plaintiffs,

v.

CONTINENTAL/MOSS–GORDIN GIN
COMPANY, Defendant.

Kelley G. LAMINACK, Plaintiff,

v.

CONTINENTAL/MOSS–GORDIN GIN
COMPANY, a corporation,
Defendant.

Civ. A. Nos. 2340–N, 2349–N.

United States District Court
M. D. Alabama, N. D.
Sept. 26, 1966.

William S. Mooneyham, and Mooneyham & Mooneyham, Montgomery, Ala., for plaintiffs Harp and Tarica.

Theodore H. Hoffmann, and Thomas F. Parker, Montgomery, Ala., for plaintiff Laminack.

Calvin M. Whitesell, and Whitesell & Alton, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

These cases, having been consolidated pursuant to Rule 42(a), Federal Rules of Civil Procedure, are now submitted upon the pleadings, the stipulations of the parties and the exhibits thereto, depositions, testimony taken orally before the Court and the exhibits thereto, and the briefs of the parties. Upon this submission this Court now, in this memorandum opinion, proceeds to make the appropriate findings of fact and conclusions of law.

The defendant, Continental/Moss-Gordin Gin Company, is engaged in the business of designing, manufacturing and installing cotton gins. The principal place of defendant's business is in Autauga County, Alabama. The plaintiffs, former employees of the defendant, were employed in Autauga County, Alabama, by defendant in its operation, and each of the plaintiffs was engaged in commerce within the meaning of the Fair Labor Standards Act during all times material to this litigation.

The plaintiff-employees were paid a regular amount each week for their hours up to a "guaranteed" number, which was determined to be fifty-four. A separate agreement was made for each employee, and each agreement recited a "regular rate" plus overtime for the guaranteed weekly wage. Each employee was paid time and one-half the recited rate for his weekly hours in excess of fifty-four. Unless the exemption provided by Section 7(e) of the Act is established by the defendant, then the regular rate for each week must be determined by dividing the guaranteed weekly wage by the number of hours worked for the guaranteed wage. These employees claim they would then be due the unpaid one-half of the regular rate for the hours worked in excess of forty each week. Overnight Motor Transport Company v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

The issue in each case is whether the duties of these employees necessitated irregular hours of work within the meaning of Section 7(e). The evidence before this Court includes summaries of weekly hours worked and wages paid. The summaries do not purport to designate any portion of the weeks in which the weekly hours were affected by absences due to holidays, sickness or personal reasons of the employees. The oral testimony presented to the Court, however, reflects that all of these plaintiff-employees, during the periods involved, were absent from time to time because of vacations, holidays, sickness and personal reasons of the employees. Except for such absences, these employees have regularly worked minimum daily and weekly schedules totaling forty hours a week or more. The employees were draftsmen for the defendant, their duties primarily being concerned with the layout and design of custom-made ginning equipment.

The form of the Section 7(e) "Belo" type contracts used by the defendant herein appears to be sufficient, and the form of the contracts, as such, has not been questioned. Sufficiency as to form, however, does not mean that the

contracts are valid. Section 7(e) of the Act provides a special exemption from the requirements of Section 7(a) of the Act. It is well-settled by controlling decisions that: (a) an employer who claims an exemption under the Act has the burden of showing that it applies, Walling v. General Industries Company, 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); Mitchell v. Kentucky Finance Company, 359 U.S. 290, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); (b) the conditions specified in the language of the Act are "explicit prerequisites to exemption," Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); (c) "The details with which the exemptions in this Act have been made preclude their enlargement by implication," Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944); and (d) exemptions provided in the Act are to be narrowly construed against the employer seeking to assert them, A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945).

The key requirement of Section 7(e) of the Act is that the "duties of such employee necessitate irregular hours of work * * *." These statutory terms are expressed in terms of ordinary usage and common understanding. An interpretation of these statutory terms must be made in light of the employer-employee relationships here involved. It is clear from the evidence in these cases that each of the plaintiffs had the same work function, that is, performing duties as a draftsman in connection with the design and layout of ginning equipment. As stated earlier, all of these employees worked at least a regular minimum schedule of forty hours per week except for absences due to vacations, holidays, illnesses or personal reasons. This is a significant factor in determining whether a particular employee's duties necessitated irregular hours of work within the meaning of the statute.

Another and equally significant factor on the question of the validity of these contracts within the meaning of Section 7(e) of the Act is that the defendant-employer, under the evidence herein presented, seemed to have control over the number of hours which each of these plaintiffs would work each week. It necessarily follows that the nature of the duties of these plaintiff-employees was not such that the employer could not control, or anticipate with any degree of certainty, the number of hours they were required to work from week to week. As a matter of fact, these plaintiffs were informed each week, in advance, the number of hours they would be working the following week. This information was passed on to the plaintiffs either in writing or verbally. Such controlled employment insofar as the required hours of work are concerned is contrary to the requirements of a "Belo" contract under Section 7(e) of the Act.

This Court concludes that none of the duties of these plaintiff-employees required anything like the type of fluctuation of hours necessitated by the character of the duties of the news reporters in Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942), or of the oil well service employees in Walling v. Halliburton Oil Well Cementing Company, 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312 (1947), whose hours, being dependent upon irregular and unpredictable occurrences and demands (or the absence thereof), fluctuated "drastically from workweek to workweek," Walling v. A. H. Belo Corporation, supra. It follows, therefore, that the defendant has not satisfied its burden in either of these cases of showing that the duties of these employees necessitated irregular hours of work within the meaning of Section 7(e) of the Act.

In addition to compensation for unpaid overtime, each plaintiff claims an additional equal amount as liquidated damages, plus a reasonable attorney's fee. In this connection the evidence reflects that the defendant, through its vice president, consulted with a representative of the Wage and Hour Division of the United States Department of Labor prior to the execution of the contracts in question. After consulting with "Mr. Sullivan" of

the Wage and Hour Division, the defendant, through its attorneys and under the supervision of its attorneys, executed the contracts with the "engineering type employees," including these plaintiffs. Upon several occasions the defendant has been checked by representatives of the United States Department of Labor, and until recently no question was raised concerning the use of the contracts. The defendant still has over fifty of its "engineering type" employees under similar contracts. This Court is satisfied under the evidence in these cases that the execution and the use of the contracts in question on the part of the defendant was in good faith and that the defendant had reasonable grounds for believing that its use of the contracts was legal.[1] In such instances courts may, in the exercise of their discretion, award no liquidated damages. This Court concludes in these cases that it would be unfair to impose upon the defendant more than a verdict which requires that these plaintiffs be compensated and that the plaintiffs' attorneys be paid for bringing these actions. Rothman v. Publicker Industries (3rd Cir. 1953), 201 F.2d 618; Reed v. Murphy (5th Cir. 1956), 232 F.2d 668.

In accordance with the foregoing, these plaintiffs are entitled to unpaid compensation as follows:

Ronald W. Harp for the period from February 7, 1964 to May 30, 1965 ---------------------------------------- $ 417.01

Joe I. Tarica for the period from February 7, 1964 to August 1, 1965 ---------------------------------------- $ 309.21

Kelley G. Laminack for the period from February 15, 1964 to August 18, 1965 ------------------------------ $ 472.79

———◆———

Pursuant to the stipulation of the parties, this Court finds that a reasonable attorney's fee for the attorney representing the plaintiffs Ronald W. Harp and Joe I. Tarica is the sum of $700, and that a reasonable attorney's fee for the attorney representing the plaintiff Kelley G. Laminack is the sum of $475.

It is, therefore, the order, judgment and decree of this Court that Ronald W. Harp have and recover of the defendant, Continental/Moss-Gordin Gin Company, the sum of $417.01; that Joe I. Tarica have and recover of the defendant, Continental/Moss-Gordin Gin Company, the sum of $309.21, and that Kelley G. Laminack have and recover of the defend-ant, Continental/Moss-Gordin Gin Company, the sum of $472.79.

It is the further order, judgment and decree of this Court that Ronald W. Harp and Joe I. Tarica, for the use and benefit of William S. Mooneyham, Attorney at Law, have and recover of Continental/Moss-Gordin Gin Company the sum of $700, and that Kelley G. Laminack, for the use and benefit of Theodore H. Hoffmann, Attorney at Law, have and recover of Continental/Moss-Gordin Gin Company the sum of $475.

It is further ordered that the costs incurred in these cases be and the same are hereby taxed against the defendant, Continental/Moss-Gordin Gin Company, for which execution may issue.

---

1. However, this finding of "good faith" is applicable only to the cases now before this Court. Certainly, the continued use of these contracts will go far, in any subsequent litigation, toward nullifying such a defense to claims for liquidated damages.