Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

WELEX, A DIVISION OF THE HALLIBURTON CORPORATION, Defendant.

Civ. A. No. V–79–19.

United States District Court, S.D. Texas, Victoria Division.

Aug. 23, 1982.

Marigny A. Lanier, Dallas, Tex., for plaintiff.

Miller Wm. Meredith, Jr., Meredith, Donnell & Edmonds, Corpus Christi, Tex., for defendant.

## ORDER

KAZEN, District Judge.

The Secretary of Labor (hereinafter "Secretary") brings suit to enjoin Welex Company, a division of the Halliburton Corporation, from allegedly violating the provisions of the Fair Labor Standards Act (hereinafter "FLSA"), as amended, 29 U.S.C. §§ 201, *et seq.,* and to restrain Welex from withholding payment of overtime compensation allegedly due its employees. Pending before the Court are cross-motions for partial summary judgment filed by Plaintiff and Defendant. Rule 56, Fed.R.Civ.P.

The FLSA requires employers to pay time and one-half an employee's regular rate of pay for all hours worked in excess of forty in any workweek. The Act excepts, *inter alia,* pay plans pursuant to so-called "*Belo* contracts". Judicially recognized in *Walling v. A.H. Belo Corporation,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942) and *Walling v. Halliburton Oil Well Cementing Co.,* 331 U.S. 17, 67 S.Ct. 1056, 91 L.Ed. 1312 (1947), the exception was codified in 1949 at § 7(f) of the Act. 29 U.S.C. § 207(f). The *Belo* contract exception permits "an employer [to] pay his employees who work different hours each week a fixed guaranteed weekly salary, thus assuring employees stability of income and employment. The contracts may be used only if the duties of the employees necessitate irregular hours of work." *Foremost Dairies, Inc. v. Wirtz,* 381 F.2d 653, 655 n. 3 (5th Cir.1967), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968), *quoting,* 95 Cong.Rec. A5475 (1949). To qualify for this exception, employers must meet certain statutory prerequisites. The only prerequisite at issue in this case is whether the duties of Welex employees "necessitate irregular hours of work". *See* 29 U.S.C. § 207(f). For reasons stated below, the Court is of the opinion that Defendant fails to meet this condition and thus cannot invoke the *Belo* exception. Accordingly, Plaintiff's motion for partial summary judgment will be granted and Defendant's motion for partial summary judgment will be denied.

A motion for summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980). The movant has the burden of proof, and any doubt as to the existence of material fact must be resolved against the moving party. *Id.* at 410. Further, exceptions to the FLSA are "to be narrowly construed against the employer asserting them." *Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d 148, 153 (5th Cir.1982); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Wirtz v. Jernigan,* 405 F.2d 155, 158 (5th Cir.1968). That precept applies to *Belo* plans, which qualify the Act's overtime provisions. *Id.* An employer who attempts to invoke the *Belo* exception "has the burden of showing affirmatively that each of the essential conditions to the exception are met." *Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d at 153; *Foremost Dairies, Inc. v. Wirtz,* 381 F.2d at 656 n. 4.

It is undisputed that the hours of Defendant's employees fluctuated in the overtime (over 40) range. The Fifth Circuit has conclusively held that if the fluctuation of hours in an employee's average workweek varies only in overtime hours, there is insufficient irregularity of hours to come within the *Belo* exception. Specifically,

" 'irregular hours of work,' does not mean merely a fluctuating long workweek, consisting only or mostly of variations in the hours required over forty. For hours to be considered irregular within the meaning of section 7(f), they must, in a significant number of weeks, fluctuate both below forty hours per week as well as above, and *the fluctuation below must result from work requirements, not vacations, holidays, illness or reasons personal to the employee.*" (emphasis added).

*Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d at 154 (footnote and citations omitted); *Foremost Dairies, Inc. v. Wirtz,* 381 F.2d at 661; *Harp v. Continental/Moss-Gordin Gin Company,* 259 F.Supp. 198, 200 (M.D.Ala.1966), *aff'd,* 386 F.2d 995 (5th Cir.1967) (per curiam).

█ The sole issue in this case is whether the fluctuations below 40 hours per week resulting from work requirements were sufficient to constitute "irregular hours of work" within the meaning of § 7(f). The Government argues that the number of fluctuations below 40 hours were very few. It submitted an affidavit of Sammy Eugene Ray, a compliance officer with the U.S. Department of Labor. Mr. Ray states that he analyzed the payroll records of Welex employees for the years 1977, 1978 and 1979. He further states that in order to determine how many workweeks fluctuated below forty hours due to work requirements, as mandated by the above cited authorities, he excluded workweeks fluctuating below forty hours due to initial and terminal weeks, vacation, illness or sick leave, holidays or bonus days off. Those exclusions are not challenged by the Defendant. What forms the basis for the present dispute is that the Government's calculations also excluded "scheduled days off". The parties have stipulated that the employees in question "are scheduled to be available for work five days per week with two days off, unless required to work more than five days because of customer requirements." Fact Stipulation No. 10, Pre-Trial Order. Excluding weeks with scheduled days off, Mr. Ray concludes that out of 150 weeks below forty in 1977, only in one week or .01% of the weeks could the fluctuation be due to work requirements. Out of 388 weeks below forty in 1978, none or 0% could be so explained. Finally, out of 643 weeks in 1979, only two weeks or .01% of the total weeks could the fluctuation be considered due to work requirements. In other words, all but three weeks over a three-year period

reflect a fluctuation of hours worked below forty which were not attributable to typical personal leaves (*e.g.,* vacation, illness, etc.).

Defendant asserts that its employees fluctuated below 40 hours in considerably more weeks than those calculated by the Government. It submitted an affidavit from Stan Patterson, Senior Personnel Analyst at Halliburton Services at Duncan, Oklahoma. Mr. Patterson states that he analyzed the payroll records of Welex's employees for the same period covered by Mr. Ray, and prepared schedules showing the number of workweeks that fluctuated below 40 hours due to work requirements. Mr. Patterson's Schedule C, which, like Mr. Ray's schedule, was calculated in the manner specified by the *Brown* decision, indicates that 16.3% of workweeks were under 40 hours during 1977–1981. The yearly percentages shown were 5.9% in 1977, 12.8% in 1978, and 30.8% in 1979.[1] The significant difference between Mr. Patterson's calculations and schedules and those prepared by Mr. Ray is, as suggested earlier, that Mr. Ray has excluded any week under 40 hours in which an employee was allowed his scheduled two days off. To decide which schedule is correct, therefore, the Court must determine whether those weeks must be included in the calculation of irregularity of non-overtime hours necessary for the valid use of a *Belo* plan.

For fluctuations below 40 hours to be considered irregular within the meaning of the *Belo* and *Halliburton* exceptions, the employees must be required to work less than 40 hours because of an unpredictable irregularity inherent in the nature of their duties. *See Foremost Dairies, Inc. v. Wirtz,* 381 F.2d at 656 n. 5. This is because one of the basic purposes of the exception is to protect employees against "short" paychecks due to a shortage or unavailability of work resulting in weeks of substantially fewer than forty work hours. *Donovan v. Brown Equipment & Service Tools, Inc.,* 666

---

1. Patterson's yearly figures were the percentage of *net* workweeks (which excluded weeks under 40 hours due to initial and terminal weeks, illness and injury, vacations, etc.). As a percentage of *total* workweeks, Mr. Patterson's yearly percentages total 5.3% in 1977, 10.65% in 1978, and 26.5% in 1979.

F.2d at 154. In *Brown,* the court specifically stated that "days off" given at the employer's discretion were not work-related and were not the type of "irregularity" contemplated by the statute. *Id.* at 154. Defendant recognizes that the critical difference between its approach and that of the Plaintiff concerns the handling of those weeks where the employees were allowed to take their regularly scheduled two days off. Calling Plaintiff's position "absurd", Defendant strenuously argues that the Plaintiff would force employees to work a seven-day week before any employer would be "entitled to use a *Belo* contract". While superficially appealing, Defendant's argument misses the point. As stated above, the *Belo* contract is not an entitlement for the employer. Rather it is an exception to be narrowly construed. It is designed to cover a situation where because of the inherent nature of the job, an employee's work hours are "irregular", fluctuating between overtime weeks and short weeks. Implicit in Fifth Circuit decisions on the subject is the proposition that this fluctuation must be beyond the employer's control. *See Harp v. Continental/Moss-Gordin Gin Company, Inc.,* 259 F.Supp. 198, 200 (M.D. Ala.1966), *aff'd* (per curiam), 386 F.2d 995 (5th Cir.1967). In this case, it is undisputed that the scheduled days off are regularly assigned on a repeating three-week schedule, and the days off include all days of the week. There is no evidence and no contention that these days off are scheduled because of the absence of available work on those days. While these days off may indeed be an "enlightened employment practice", they are not the type of irregularity contemplated by the statute. *Brown,* 666 F.2d at 154. Indeed, adoption of the Defendant's argument could enable an employer to effectively manipulate "irregularity". For example, an employer could schedule days off during busy days some weeks and then schedule the days off during slower days in other weeks, while requiring overtime work during the busy days.

2. Even if *Boll* could be read to support Defendant's position, this Court is bound by precedent established by the Fifth Circuit in *Foremost*

Defendant's reliance on *Boll v. Federal Reserve Bank of St. Louis,* 365 F.Supp. 637 (E.D.Mo.1973), *aff'd,* 497 F.2d 335 (8th Cir. 1974) is misplaced. In that case, a federal bank examiner was held to be properly paid under a *Belo* contract because of his irregular hours of work. By Defendant's reasoning, since most banks are open only five days a week, a bank examiner's workweek is analogous to that of field employees who are given their scheduled two days off (and therefore have a five-day workweek). Since *Boll* found the bank examiners' hours to be irregular, Defendant argues that its employees' regularly scheduled two days off should likewise be counted in determining irregularity. This Court does not reach that result from *Boll.*[2]

In *Boll,* an assistant bank examiner contended that because his employer established the schedule of banks to be examined at the beginning of each year and determined several months in advance which individuals were to examine particular banks, the hours of work varied from week to week at the discretion of the employer, and therefore the *Belo* exception was inapplicable. The court found § 778.405, 29 C.F.R. of the Department of Labor Interpretive Bulletin, which excludes from the calculation of irregular hours those weeks "where the employee works an irregular number of hours according to a predetermined schedule," to be a reasonable interpretation of the Act. 365 F.Supp. at 644. It nevertheless denied the employee's claim:

> [W]hile the examination of banks was scheduled ahead of time, the number of hours that would be required to complete an examination was not known by the defendant. Although defendant would obviously know that the examination of a large bank would probably require more time than the examination of a smaller bank, the number of hours the assistant examiners would work during a particular examination could not be controlled

*Dairies* and its progeny, which support the opposite conclusion.

by defendant nor could the number of hours they would work be anticipated with any degree of certainty. *Thus, the number of hours plaintiff worked per week were not the result of the discretion of defendant nor were they ascertainable from the schedule of the order in which the banks would be examined.* Plaintiff's duties necessitated irregular hours of work.

*Id.* at 645 (emphasis added). Unlike the employer in *Boll,* Defendant's scheduled two days off for its employees was the result of its discretion. The timing of the days off could be anticipated with reasonable certainty and, by Defendant's own admission, the days off fell at all days of the week irrespective of the work load.

In summary, the weeks under 40 hours in which an employee was allowed his scheduled two days off were properly excluded from Mr. Ray's calculations and schedules. These schedules show that only a very few weeks in 1977 to 1979 were fluctuations below 40 hours dictated by lack of work as opposed to being dictated by the employer's control of the work hours. Following the Fifth Circuit in *Donovan v. Brown Equipment & Service Tools, Inc.* and *Foremost Dairies, Inc. v. Wirtz,* this Court finds as a matter of law that Defendant failed to show the kind of irregularity in non-overtime hours necessary for the valid use of a *Belo* plan. Accordingly, Plaintiff's motion for partial summary judgment is hereby GRANTED and Defendant's motion for partial summary judgment is hereby DENIED.